AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-2013)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ20-477 |
| SUBJECT PARCEL bearing confirmation no. EJ251110133US, more fully described in Attachment A | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of Controlled Substances & Unlawful Use of Communication Facility, |
| 21 U.S.C. § 843 | (U.S. Mails) to Distribute Controlled Substances. |

The application is based on these facts:

✓ See Affidavit of Postal Inspector Michael D. Harrold, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Michael D. Harrold, Postal Inspector USPIS
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   7/29/2020

_____
*Judge's signature*

City and state:   Seattle, Washington          Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

USAO# 2020R000611 [De'AMORES to De'AMORES]

1  **STATE OF WASHINGTON** )
2                                          )
   **COUNTY OF KING**            )
3

4                                **AFFIDAVIT**

5       I, Michael D. Harrold, being first duly sworn on oath, depose and say:

6                               **BACKGROUND**

7       1.      **Affiant Background.** I am a United States Postal Inspector, assigned to
8  investigate the unlawful transportation of contraband, including Title 21 controlled
9  substances, through the United States mail.  I have been a Postal Inspector since
10 December, 2018, and am currently assigned to the Seattle Division Headquarters office,
11 located in Seattle, Washington.  As part of my duties, I investigate incidents where the
12 U.S. mail system is used for the purpose of transporting illegal materials, including
13 controlled substances such as marijuana, cocaine, methamphetamine and heroin, in
14 violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and substances
15 mailed in violation of Title 18, United States Code, Section 1716 (injurious articles).  I
16 have completed the Criminal Investigator Training Program (CITP) at the Federal Law
17 Enforcement Training Center (FLETC) and Naval Criminal Investigative Service (NCIS),
18 Special Agent Basic Training courses in 2011 and was employed as a Special Agent with
19 NCIS. From 2001 to 2011, I was a Trooper with the Georgia State Patrol (GSP),
20 completing Trooper School at the Georgia Public Safety Training Center (GPSTC). I was
21 a Police Officer with the Marietta, GA Police Department from 1999 to 2001, completing
22 basic mandate training at the Northwest Georgia Law Enforcement Academy. I have
23 received specialized training in the investigation of controlled substances in the U.S.
24 mails.  I have also received training on the identification of controlled substances and
25 interdiction of controlled substances.

26      2.      **Duties, Training & Experience.**  As part of my duties, I investigate the
27 use of the U.S. mails to illegally mail and receive controlled substances, the proceeds of
28 drug trafficking, as well as other instrumentalities associated with drug trafficking, in

AFFIDAVIT OF INSPECTOR M. D. HARROLD - 1
USAO# 2020R00661 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession
2  with intent to distribute controlled substances), and 843(b) (unlawful use of a
3  communication facility, including the U.S. mails, to facilitate the distribution of
4  controlled substances and proceeds from the sale thereof).  As set forth below, my
5  training and experience includes identifying parcels with characteristics indicative of
6  criminal activity.  During the course of my employment as a law enforcement officer, I
7  have participated in many criminal investigations involving suspicious parcels and
8  controlled substances.

9      3.    The information contained in this affidavit is based upon knowledge I
10 gained from my investigation, my personal observations, my training and experience, and
11 investigation by other Inspectors, agents, and officers.  Because the purpose of this
12 affidavit is limited to setting forth probable cause to search the SUBJECT PARCEL
13 described below, I have not set forth every fact of which I am aware pertaining to the
14 investigation.

15     4.    Through my training and experience, I am aware that the United States
16 Postal Service (USPS) mail system is often used to transport controlled substances and/or
17 the proceeds from the sales of controlled substances throughout the United States.  I have
18 learned and observed that sometimes drug traffickers put controlled substances and
19 proceeds in the same parcel.  I also know that drug traffickers prefer mail/delivery
20 services such as Express and Priority Mail because of the reliability of these services, as
21 well as the ability to track the article's progress to the intended delivery point.  When a
22 drug trafficker learns that a mailed article has not arrived as scheduled, he/she becomes
23 suspicious of any delayed attempt to deliver the item.

24     5.    In addition, I am aware that the USPS Express and Priority Mail services
25 were custom-designed to fit the needs of businesses by providing overnight delivery for
26 time sensitive materials.  Business mailings often contain typewritten labels, are in flat
27 cardboard mailers, and usually weigh less than eight (8) ounces.  In addition, businesses
28

AFFIDAVIT OF INSPECTOR M. D. HARROLD - 2
USAO# 2020R00661 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | using corporate charge accounts print their account number on the Express and Priority
2 | Mail label in order to expedite transactions with USPS.

3 |      6.      Based on my training and experience concerning the use of Express and
4 | Priority Mail for the transportation of controlled substances and/or  proceeds from the
5 | sales of controlled substances, I am aware that these parcels usually contain some or all
6 | of the following characteristics (which are different than characteristics of parcels being
7 | sent by legitimate businesses):

8 |          a.      Unlike typical Express and Priority Mail business mailings which
9 |                  usually have typed labels, parcels containing controlled substances
10 |                 and/or proceeds often have handwritten address information.  In
11 |                 addition, the address information often contains misspelled words or
12 |                 incomplete/incorrect addresses. This is done in an effort to help
                    conceal the true identities of the individuals involved.

13 |         b.      The handwritten label on Express and Priority Mail parcels
14 |                 containing controlled substances and/or proceeds do not contain a
15 |                 business account number and/or credit card number.  This often
16 |                 indicates that the sender likely paid cash.  A credit card or business
                    account number would more likely enable law enforcement officers
                    to connect the parcel to identifiable individuals.

17 |         c.      Express and Priority Mail parcels containing controlled substances
18 |                 and/or proceeds are often distinguishable from typical business
19 |                 mailings as they do not bear any advertising on the mailing
20 |                 container/box, and are typically mailed from one individual to
                    another.

21 |         d.      The sender and/or recipient addresses on Express and Priority Mail
22 |                 parcels containing controlled substances and/or proceeds are often
23 |                 either fictitious, or are persons not associated with the addresses
                    listed in USPS or law enforcement databases.

24 |         e.      The zip codes for the sender addresses on Express and Priority Mail
25 |                 parcels containing controlled substances and/or proceeds are often
26 |                 different from the zip codes of the post offices from where the
                    parcels were mailed.

27 |
28 |

AFFIDAVIT OF INSPECTOR M. D. HARROLD - 3
USAO# 2020R00661 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f.  Express and Priority Mail parcels containing controlled substances and/or proceeds are often heavily taped with tape on the seams of the parcel, in an apparent effort to conceal scent.

g.  Express and Priority Mail parcels containing controlled substances and/or proceeds often include a waiver of signature requirement upon delivery.

7.  Inspectors who encounter a parcel with any or all of the above characteristics often further scrutinize the parcel by, among other tactics, conducting address verifications using law enforcement databases and conducting trained narcotic-detecting canine examinations.

## ITEM TO BE SEARCHED

8.  As set forth in Attachment A, this affidavit is made in support of an application for a search warrant for one USPS Express Mail parcel, hereinafter referred to as the "SUBJECT PARCEL."  This parcel is believed to contain controlled substances or proceeds from the sale of controlled substances.  The SUBJECT PARCEL is further described as follows:  One USPS Express Mail parcel addressed to "Mila De'Amores, 13021 212th Avenue Court East, Bonney Lake 98391" with a return address of "Hakeem De'Amores, 10426 SW 52nd St., Cooper City, FL 33328."  This parcel measures approximately 14 1/4" x 20" x 4" with a weight of approximately 2 pounds 4 ounces. This parcel is postmarked July 27, 2020, from zip code 33328 and carries $57.65 in postage.  The delivery confirmation number is EJ251110133US.  The parcel is currently located at the USPS Seattle Processing and Distribution Center, 10700 27th Ave. S., Seattle, Washington.

## ITEMS TO BE SEIZED

9.  The application requests that law enforcement officers and agents be authorized to seize the following from the SUBJECT PARCEL, which constitute the fruits, instrumentalities, and evidence of mailing and distribution of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 843(b) (unlawful use of a

AFFIDAVIT OF INSPECTOR M. D. HARROLD - 4
USAO# 2020R00661 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communication facility, including the U.S. mails, to facilitate the distribution of controlled substances):

      a.    Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, oxycodone, and Oxycontin;

      b.    Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

      c.    Controlled substance-related paraphernalia;

      d.    Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

      e.    Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

      f.    Fingerprints and/or handwriting, to identify who handled and/or mailed the parcel.

## THE INVESTIGATION

10.    On July 28, 2020 U.S. Postal Inspectors were performing an Express Mail interdiction at the United States Postal Service mail facility located at Seattle Processing and Distribution Center (P&DC), 10700 27th Ave. S., Seattle, Washington. The emphasis for the interdiction was targeting inbound Express and/or Priority Mail parcels and envelopes possibly containing narcotics and/or monetary proceeds derived from illegal drug trafficking activity.

11.    The SUBJECT PARCEL was identified as suspicious due the hand written label. The SUBJECT PARCEL was heavily taped. Handwriting on the SUBJECT PARCEL showed a zip code for the sender which appeared to have a number written over a previously written number. The SUBJECT PARCEL was paid for with cash. I know through my training and experience that these are tactics commonly used by drug traffickers using the U.S. mails in an attempt to elude detection by law enforcement.

AFFIDAVIT OF INSPECTOR M. D. HARROLD - 5
USAO# 2020R00661 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     Using USPS and law enforcement databases, I researched the sender name and address listed on the SUBJECT PARCEL. I learned that the address "10426 SW 52nd St Cooper City FL 33328" is a true and deliverable address. An individual by the name of "Hakeem De'Amores" did not report to the address listed, or in the state of Florida. The phone number listed for the sender was "(954) 882-7927" This phone number did not report to "Hakeem De'Amores."

13.     Using USPS and law enforcement databases, I researched the recipient name and address listed on the SUBJECT PARCEL. I learned that the address "13021 212th Avenue Court East Bonney Lake 98391" is a true and deliverable address, when the state of WA is added to the address. An individual by the name of "Mila De'Amores" did not report to the address listed, or in Washington State. A phone number was not listed for the recipient.

14.     Based upon this information, on July 28, 2020 at approximately 09:16 AM, Inspectors requested the assistance of Detective James Sturgill and his canine partner "Apollo."  The parcel was hidden in a large warehouse that had been cleared by Officer Sturgill and Apollo and determined to be clear of the scent of narcotics. Detective Sturgill systematically applied Apollo starting with the periphery of the warehouse.  Apollo performed "a passive alert" indicating the positive odor of narcotics emitting from the parcel.  K9 Officer Sturgill's affidavit describing Apollo's training and qualifications is attached to this affidavit and incorporated herein by reference.

## CONCLUSION

15.     Based on the facts set forth in this Affidavit, as well as the attached affidavit (incorporated herein by reference) of Detective Sturgill, I believe there is probable cause to conclude that the SUBJECT PARCEL contains controlled substances, currency, documents, or other evidence, more fully identified in Attachment B, that relates to the mailing and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution  and possession with intent to

AFFIDAVIT OF INSPECTOR M. D. HARROLD - 6
USAO# 2020R00661 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  distribute controlled substances) and 843(b) (unlawful use of a communication facility,

2  including the U.S. mails, to facilitate the distribution of controlled substances).

3

4  _____

5  MICHAEL D. HARROLD
   U.S. Postal Inspector, US Postal Inspection Service

6

7          The above-named agent provided a sworn statement attesting to the truth of the

8  contents of the foregoing affidavit by telephone on the 29th day of July, 2020.

9

10 _____

11 BRIAN A. TSUCHIDA
   Chief U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF INSPECTOR M. D. HARROLD - 7
USAO# 2020R00661 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

**ATTACHMENT A**

Parcel to be searched

3

4

5

6

7

8

One USPS Express Mail parcel addressed to "Mila De'Amores, 13021 212th Avenue Court East, Bonney Lake 98391" with a return address of "Hakeem De'Amores, 10426 SW 52nd St., Cooper City FL 33328." This parcel measures approximately 14 1/4" x 20" x 4" with a weight of approximately 2 pounds 4 ounces. This parcel is postmarked July 27, 2020, from zip code 33328 and carries \$57.65 in postage. The delivery confirmation number is EJ251110133US.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A - 1
PARCEL TO BE SEARCHED
USAO# 2020R00611 [De'AMORES to De'AMORES]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2

# ATTACHMENT B
## Items to be seized

3
4
5
6
7

The following items that constitute evidence, instrumentalities, or fruits of violations of Title 21, United States Code, Section(s) 841(a)(1), distribution and possession with intent to distribute controlled substances, and 843(b), unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances:

8
9
10

a.      Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, oxycodone, and Oxycontin;

11
12

b.      Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

13

c.      Controlled substance-related paraphernalia;

14
15

d.      Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

16
17

e.      Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

18
19

f.      Fingerprints and/or handwriting, to identify who handled and/or mailed the parcel.

20
21
22
23
24
25
26
27
28

ATTACHMENT B - 1
ITEMS TO BE SEIZED
USAO# 2020R00611 [De'AMORES to De'AMORES]

# Tukwila Police Department
## Anti-Crime Team K-9

Detective James Sturgill
July 28, 2020

**DETAILS**

On July 28, 2020 at 0916 hours, I, Tukwila Police Detective/ USPIS TFO J. Sturgill assisted USPIS with a suspicious parcel at the Seattle Processing and Distribution Center located at 10700 27th Avenue South, Tukwila, Washington 98168. I first used my canine partner (Apollo) to search a warehouse to clear it of any odors of narcotics. USPIS Inspector M. Harrold then placed the suspicious parcel in the warehouse out of the view of Apollo and I. At approx. 0927 hours, Apollo and I started the search for the suspicious parcel by sniffing the warehouse in a systematic manner. Upon encountering the parcel, Apollo stopped, had a change of behavior and sat. When Apollo sits, it's an indication to me that he could smell the odor of narcotics coming from the parcel. I rewarded Apollo with a rubber ball. At approx. 0928 hours, Apollo alerted on the following parcel:

> **Tracking #: EJ 251 110 133 US**
>
> **Sender: Hakeem De'Amores, 10426 SW 52nd St, Cooper City, FL 33328**
>
> **Recipient: Mila De'amores, 13021 212th Avenue Court east, Bonney Lake, Washington 98391**

This concludes my involvement in the case.

**OFFICERS TRAINING/EXPERIENCE**

I, James Sturgill have been a commissioned law enforcement officer for the past seventeen years. I am employed by the City of Tukwila and have recently been assigned to the Tukwila Anti-Crime Team; I am currently the K-9 Narcotic's Detective assigned to that unit. During my career, I have investigated several narcotics-related crimes in and around the City of Tukwila.

My current duties include investigating federal and state narcotics violations within the jurisdiction of the County of King, the State of Washington, and the United States.

During my career, I have received extensive training to include: 720 hours at the Washington State Criminal Justice Training Center's Basic Law Enforcement Academy. This training includes numerous hours of instruction on Criminal Law, Property Crimes, Crimes against Persons, basic report writing, Narcotics Investigations and recognition (including the recognition of marijuana, cocaine, heroin and methamphetamine). I have received further training to assist me with narcotics investigations and arrests.

In 2006, I received 48 hours of Gang Investigation and Street Crimes training. These courses included gang and narcotic recognition, buy bust operations, surveillance and interview techniques, how narcotics are transported and where narcotics can be hidden in vehicle's, homes, and in humans. In 2013, I received 24 hours of similar training by attending Gangs in the Northwest and Street Survival. I also attended How to Manage a CI in 2013. This course focused on how to interview suspects of narcotics related offenses and how to turn that person into a confidential informant. This course included interview techniques and basic search warrant preparation and service. In 2014, 2015 and 2018, I received nationally recognized narcotics training provided by California Narcotics Officers Association (CNOA). In 2014, 2015 and 2018 I received nationally recognized narcotics training provided by Washington State Narcotics Investigators Association (WSNIA). Both CNOA and WSNIA are 4-day classroom courses containing numerous narcotic related classes. In 2015 and 2018, I attended Operation Jetway Interdiction training. This 32-hour classroom course is conducted by EPIC/DEA and focuses on the many ways that police officers can interdict drugs and drug proceeds from DTO's. In 2017 and 2019, I received 32 hours of classroom interdiction training with the nationally recognized International Narcotics Interdiction Association (INIA). In 2016, I completed the 200-hour Washington State Narcotic's Canine Course. During the 6-week course, my canine partner "Apollo" was trained to identify and alert on the odors of Cocaine, Heroin, Methamphetamine and Marijuana. During the early part of my career, I worked numerous cases with the Tukwila Anti-Crime (TAC) Team, working as a uniformed take down officer. I assisted the TAC Team with several buy walks and buy busts during my career. I also personally investigated numerous VUCSA cases while working as a patrol officer in the City of Tukwila.

By virtue of my assignment with the TAC Team, I am authorized to conduct investigations into violations of the Controlled Substances Act. In doing so, I have conducted a variety of investigations into violations ranging from simple possession of narcotics to the sales of narcotics. Because of this experience and training, I am familiar with common methods of investigating drug trafficking and have become familiar with the methods of operation of drug traffickers, their use of cellular telephones, telephone pagers, emails, and other electronic means of communication to further their narcotics trafficking activities; and their use of numerical codes, code words, counter-surveillance, and other methods of avoiding detection by law enforcement. I am also familiar with the various methods of packaging, delivering, transferring, and laundering.

I have participated in the execution of narcotics search warrants. Most commonly, these warrants authorize the search of locations ranging from the residences of drug traffickers and their coconspirator/associates, to locations used to manufacture, distribute and hide narcotics and drug proceeds. Materials searched for and often recovered in these locations include packaging materials, manufacturing items, scales, weapons, documents and papers reflecting the distribution of controlled substances and the identity of coconspirator associates, and papers evidencing the receipt, investment, and concealment of proceeds derived from the distribution of controlled substances.

**CANINE QUALIFICATIONS**

I'm currently assigned to the Tukwila Anti-Crime Team and handle a narcotics canine as a collateral duty. In November 2016, I completed the state mandated requirement of 200 hours of canine narcotics specific training and met the canine performance standards set by the Washington Administrative Code (W.A.C.) 139-05-915 for the Narcotic Dog Handler (General Detection).

On November 13, 2016 Canine "Apollo" and I were certified as a team by the Washington State Police Canine Association. We recertified on January 8th, 2019 in Bothell,WA. The WSPCA is an organization

with voluntary membership to improve training and effectiveness of canine teams statewide. The WSPCA certification is also voluntary with more stringent standards than the state requirement. The substances trained on by the team are cocaine, heroin, methamphetamine and marijuana.

Apollo is a passive alert canine and he is trained to give a "sit response" after having located the specific location the narcotics odor is emitting from. The handler is trained to recognize the changes of behavior the canine exhibits when it begins to detect the odor of narcotics.   The odor can be emitting from the controlled substance itself, or it can be absorbed into items such as currency, clothing, containers, packaging material, etc.  Narcotic smelling canines such as "Apollo" have an inherently keen sense of smell and will continue to alert on the container or item depending on the length of exposure to the controlled substance, and the amount of ventilation the item is exposed to.

Apollo's reward for finding narcotics / narcotic related items is a rubber ball or leather strap.  Apollo and I continue to train on a regular basis to maintain our proficiency as a team.
On-going training includes or will include:
- Training in all areas of interdiction, such as vehicles, boats, truck tractor and trailers, schools, currency, parcels and mail, airports and airplanes, bus and bus depots, storage units, residences, trains and train depots, prisons, motels, apartments, etc.
- Training on various quantities of controlled substances, ranging from grams to ounces, and pounds when available.
- Training on novel odors, such as odors that are distracting, masking, or new.
- Training on controlled negative (blank) testing, in which all objects or locations have no contraband present
- Training in "Double Blind" scenarios
- Extinction training, which proofs the dog and prevents him from alerting to common items associated with controlled substances, such as plastic bags, etc.

I maintain both training logs and field activity/application reports.  Both are available for review upon request. At this time the team has found over 1000 narcotics substance training aids and 151 applications in the field resulting in the seizure of narcotics and currency.

Canine Apollo is trained to detect the presence of marijuana, heroin, methamphetamine, and cocaine. Canine Apollo cannot communicate which of these substances he has detected. Canine Apollo can detect minuscule amounts of these four substances. Canine Apollo cannot communicate whether the detected substance is present as residue or in measurable amounts. Despite these limitations, canine Apollo's alert provides probable cause to believe that evidence of a Violation of a Uniform Controlled Substance Act may be found where the canine provides a positive alert for the odor of controlled substances.

I certify or swear under the penalty of perjury the foregoing statement is true and correct.

Detective James C. Sturgill
Tukwila Police TAC Team
Badge #151